IN THE FEDERAL DISTRICT COURT FOR THE SOUTHER DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



RACHEL KING, INDIVIDUALLY,
AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF CHRISTOPHER KING
AND ON BEHALF OF ALL WRONGFUL DEATH
BENEFICIAIRES                                                                          PLAINTIFFS

VERSUS                                         CAUSE NO.: ___1:26cv106 HSO-BWR___

DEPARTMENT OF VETERANS AFFAIRS
VETERANS ADMINISTRATION MEDICAL CENTER;
JOHN OR JANE DOES A-C;
AND CORPORATIONS X, Y, AND Z                                      DEFENDANTS


## COMPLAINT

### (JURY TRIAL REQUESTED)

COME NOW the Plaintiffs, Rachel  King, Individually, and as Personal Representative

of the Estate of Christopher King, and on behalf of all Wrongful Death Beneficiaries by and

through undersigned counsel, and file their Complaint against Defendants, Department of

Veterans Affairs - Veterans Administration Medical Center; John or Jane Does A-C; and

Corporations X, Y, and Z; and in support of their cause of action, show the following:

### PARTIES

1.  Plaintiff, Rachel King, is an adult resident citizen of Escambia County, Florida.

2.  The Defendant, Department of Veterans Affairs - VETERANS ADMINISTRATION

MEDICAL CENTER ("VA") is an agency of the federal government and may be served by

delivering a copy of the Summons and Complaint to U.S. Attorney for the Southern District of

Mississippi, James "Baxter" Kruger and/or Michael Anfang, Mississippi Department of Veterans

Affairs Office Regional Counsel, Veterans Administrations Medical Center, 155 Van Gordon,

1

Suite 551, Lakewood, CO 80228 (1500 E. Woodrow Wilson Blvd., Jackson, Mississippi 39216-0299). This action is brought pursuant to the Federal Tort Claims Act.

3. Defendants, JOHN or JANE DOES A - C and CORPORATIONS X, Y, and Z are individuals and/or entities who caused or contributed to the injuries of the Plaintiffs, but whose identities, and the scope of their liability, are presently unknown to the Plaintiffs. Defendants John and Jane Doe A - C and Corporations X, Y, and Z may include, but are not limited to, any and all employees and/or representatives of VA, involved in any way in the purported care of the decedent, Christopher King; and/or any and all association(s) and/or business relationship(s) and/or business entities formed by and between VA and a third-party medical services provider. Plaintiffs will amend their Complaint to join Defendants John and Jane Doe A-C and Corporations X, Y, and Z and describe their liability, when their true identities, and liability, are ascertained.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction of this cause pursuant to 28 U.S.C. §1331, based on the existence of federal question jurisdiction. The action is based on 28 U.S.C. §2401.

5. Venue in this civil action is appropriate in this Court as a substantial part of the events or omissions giving rise to the claims of the Plaintiffs occurred in Harrison County, Mississippi in the Southern District of Mississippi.

6. The Plaintiffs gave timely notice of their claim, as shown by a copy of the Claim for Damages, Injury or Death ("Form 95" or "SF95 Claim" form) to Defendant dated September 4, 2025, attached hereto as **Exhibit "A."** True and correct copies of the acknowledgement of receipt and denial of claim are attached hereto as **Exhibit "B" and "C" respectively.**

2

7. A certificate of Expert Consultation is attached hereto and incorporated herein by reference as **Exhibit "D."**

## FACTS AND CAUSES OF ACTION

8. Based on information and belief, the Defendant, VA, operates a medical facility in Harrison County, Mississippi and directs the actions of the employees, representatives, and agents of VA.

9. Based on information and belief, VA is a facility located in Biloxi, Mississippi and is a health care facility licensed under the provisions of Miss. Code Ann. §41-9-1 et seq. and/or other applicable Mississippi laws.

10. On or about October 25, 2023, between 9:00 and 10:am, Christopher King presented to the Emergency Room at the VA at 400 Veterans Blvd., Biloxi, Mississippi, with chest pains, fever, and chills. Mr. King reported that he had been throwing up the night before. The VA ran labs and the results of the labs showed critically elevated cardiac enzyme levels when he arrived at the Emergency Room. After hours of waiting in the Emergency Room, he was discharged by Doctor Christopher Vaughan with a diagnosis of anxiety attack and a cold at 5:19 pm.

11. The objectively identifiable medical standard of care for Emergency Rooms requires an immediate, rapid, and comprehensive workup to rule out life threating conditions, such as acute myocardial infarct.

12. Christopher King was discharged without any comprehensive workup to rule out acute myocardial infarct.

3

13. Christopher King's trapoinin and other cardia enzyme levels were not repeatedly tested and monitored.

14. The objectively identifiable standard of care is to rule out heart attack by the used of heart attack protocols when someone presents to the Emergency Room with features of a heart attack.

15. Christopher Kind was discharged from the VA Emergency Room in Biloxi, Mississippi without it performing any heart attack protocols before discharge.

16. After discharge and throughout the night Mr. King suffered with significant chest pain and vomiting. The next morning, Mrs. King put Mr. King into the car to take him to the Emergency Room at the VA again.

17. As Mrs. King was pulling into the VA parking lot, Mr. King died and was taken into the VA where he was pronounced dead.

18. An autopsy revealed that Mr. King died of acute myocardial infarct.

19. The death certificate lists his cause of death as acute myocardial infarct as a contributing condition. The autopsy revealed acute myocardial infarct. These findings are consistent with sudden cardiac death due to ischemia or arrhythmia.

20. The care provided to Mr. King at the VA fell below the standard of care for emergency medicine and directly contributed to his death.

21. Serial troponin testing was not performed in violation of ACC/AHA guidelines. This failure fell below the accepted standard of care.

22. Despite these facts, Mr. King's condition was misattributed to anxiety and a cold, which was not supported by the available data. Such was insufficient to explain his symptoms. This reflects diagnostic anchoring and premature case closure.

23. Had Mr. King been admitted for observation, serial troponin testing, correction of electrolyte disturbance, and cardiac monitoring, his death would likely haven been prevented.

24. VA's departures from the standard of care were a direct, foreseeable, and preventable cause of Mr. King's death.

25. As a result of the actions of the Defendant and its staff or employees, Mr. King was subjected to physical pain, injury, mental anguish, and death. As a result of the actions of the Defendant and its staff or employees, the wrongful death beneficiaries suffered the loss and support of Mr. King.

26. At all relevant times, Defendant operated the emergency room and controlled employment of the personnel working for them, including, but not limited to Dr. Vaughn.

27. At all relevant times, the employees of Defendant VA that provided medical services and/or treatment were the agents of VA, and in an agency relationship with each other regarding the operations of the VA and regarding the employment of and control of the employment of the personnel working for them, including, but not limited to nurses, doctors, and other medical personnel that provided services and treatment to Mr. King.

## COUNT I: MEDICAL NEGLIGENCE

28. Plaintiffs re-allege and incorporate the above allegations as if fully copied herein.

29. Defendant owed a duty to their patients, including Mr. King, to provide treatment within the nationally recognized standard of care, as a minimally competent doctor would under the same or similar circumstances.

30. During the course and scope of Mr. King's treatment at VA, the Defendant failed to exercise the degree of knowledge, skill, and diligence that it should have possessed and exercised on behalf of Mr. King in his treatment, care, management, and observation. Such carelessness,

negligence, breach of the standard of care, and gross negligence, include, but are not limited to, the following:

    a.  Failure to properly diagnose the condition of Mr. King;

    b.  Failure to properly treat the condition of Mr. King and prevent death;

    c.  Failure to properly and timely evaluate and treat Mr. King;

    d.  Failure to communicate with Mr. King;

    e.  Failure to competently evaluate the condition of Mr. King;

    f.  Failure to administer necessary testing;

    g.  Failure to provide the minimum number of staff necessary to assist Mr. King;

    h.  Failure to adequately supervise staff and medical records;

    i.  Failure to monitor Mr. King's care and treatment;

    j.  Failure to maintain appropriate records regarding Mr. King's care including the failure to monitor and document significant risks and injuries;

    k.  Failure to provide due care to Mr. King while he was in the medical provider's care and supervision;

    l.  Failure to provide care, treatment, and medication in accordance with professional standards and practices;

    m.  Failure to protect Mr. King from harm within the facility;

    n.  Failure to institute and employ appropriate policies, procedures, and/or protocols to ensure that the proper care is provided;

o.  Failure to properly assess, evaluate, and supervise medical personnel to ensure Mr. King received appropriate medical care, in accordance with VA's policies and procedures, the Mississippi Minimum Standards, federal regulations, and the Joint Commission guidelines;

p.  Failure to obtain full, complete, and informed consent;

q.  Failure to hire, supervise, and train certain doctors, nurses, nurse practitioners, or other medical staff who are fit and/or competent and/or experienced and/or skilled;

r.  Failure to exercise or possess the degree of care, skill, and learning ordinarily exercised or possessed by other healthcare professionals and nurses with regard to the existing state of knowledge in medicine.

31.  Defendant owed Mr. King a duty to exercise the standard of care required of minimally qualified medical providers. Defendant had the duty to take reasonable care to prevent foreseeable injury to Mr. King, by providing qualified medical staff in their facilities, including, but not limited to emergency room physicians.  The Defendant had a duty to review the medical records, to verify the medical records, and to verify that the proper testing procedures were followed.  The Defendants, each of them, had the duty to make sure a complete copy of the patient's medical records was available to all of the medical providers and that they communicated with each other.  Defendant breached its duties and breached the standards of care owed to Mr. King.  Such breaches proximately caused or contributed to the severe injuries and damages sustained and suffered by Mr. King and the wrongful death beneficiaries.  These injuries include the following:

a.  Bodily injury including death;

7

b. Past physical pain;

c. Past, present, and future mental anguish and emotional distress;

d. Past medical treatment;

e. Loss of enjoyment of life;

f. Punitive damages; and

g. Other damages and injuries to be shown at the trial of this matter.

32. The actions of the Defendant were grossly negligent in the rendering care to Mr. King and were done in a reckless and wanton manner in disregard of the safety of the public, and Mr. King, in particular, by disregarding well-established, national guidelines for cardiac health. The American College of Cardiology and the American Heart Association require serial troponin testing and risk-based decision making. Defendants knew, or should have known, that due to his high-risk and displayed symptoms, Mr. King required admission and observation.

33. As a direct and proximate result of Defendants' negligence, breach of the standard of care, gross negligence, and/or recklessness, Mr. King suffered and died, as referenced and described throughout this Complaint, which was a foreseeable consequence of Defendant's acts and omissions.

## COUNT II: FAILURE TO PROPERLY HIRE, TRAIN, AND SUPERVISE

34. Plaintiffs re-allege and incorporate the above allegations as if fully copied herein.

35. Defendant had a duty to hire, employ, train, supervise, entrust, and retain skillful and competent employees and/or agents to provide medical services. Based on knowledge and belief, Defendant negligently and/or grossly negligently failed to hire, employ, train, supervise, entrust, and retain skillful and competent employees and/or agents to provide emergency medical services that complied with the applicable standards of care.

8

36. Further, Defendant had the duty to supervise the medical treatment rendered by the personnel of its facilities to members of the public, including Mr. King. Defendant, by and through their agents, representatives, and officers, negligently and/or grossly negligently failed to supervise the medical treatment rendered to Mr. King.

37. It was foreseeable to Defendant that the acts and omissions set forth in the preceding paragraphs would cause or contribute to cause serious injury or harm to members of the public, including Mr. King, and in fact, Defendant's said acts and omissions did cause and/or substantially contributed to cause Mr. King to suffer severe injuries and death as set forth throughout this Complaint.

## COUNT III: *RESPONDEAT SUPERIOR*/VICARIOUS LIABILITY

38. The Plaintiffs adopt and incorporate all allegations set forth in the preceding paragraphs as if fully stated herein.

39. Defendant, VA, is vicariously liable for all acts/omissions of any and all personnel that work for VA under the doctrine of *respondeat superior* and apparent agency, and VA is liable for the acts/omissions of its agents, servants, or employees including John Does A-C, in their care of Christopher King.

40. Defendant, directly and/or through its respective actual and/or apparent agents, servants, and employees, acting within the scope of their agency or employment, breached their respective duties and the applicable standard of care, and were negligent, grossly negligent, willful, wanton, reckless, and careless in the following manner, including but not limited to:

   a. In failing to intervene to prevent further injury to Christopher King;

   b. In failing to appreciate and recognize Christopher King's injuries in a timely and appropriate manner;

9

c. In failing to respond to Christopher King's injuries in a timely manner;

d. In failing to properly monitor Christopher Frommeyer, other residents, and staff;

e. In failing to administer necessary tests in a timely fashion;

f. In otherwise failing to adhere to applicable standards of care;

g. In failing to appropriately hire, train, and employ staff and caregivers at VA

41. The unnamed and unidentified defendants were acting within the course and scope of their employment with VA and breached their respective duties and the applicable standard of care and were negligent as detailed above and through other acts and omissions as may be uncovered through the discovery process.

42. The employees of VA at all times were agents of their respective employers.

43. Vicarious liability of Defendant, VA, and all unknown parties attaches to allow joint and several liability against all Defendants.

44. As a direct and proximate result of the Defendants' negligence, Plaintiffs sustained injuries and suffered damages as a result.

## COUNT IV: WRONGFUL DEATH

45. The Plaintiffs adopt and incorporate all allegations set forth in the preceding paragraphs as if fully stated herein.

46. This claim is brought by and on behalf of Rachel King, individually, and as Personal Representative of the Wrongful Death Beneficiaries pursuant to Mississippi Code, Annotated, Section 11-7-13.

47. Defendant caused the death of Christopher King, through their medical negligence and/or omissions as set out above.

10

48. Rachel King, individually, as Personal Representative of the Wrongful Death Beneficiaries, is entitled to recover all damages allowable by law as the jury may determine to be just including:

    a.  Medical expenses;

    b.  Funeral expenses;

    c.  Lost income;

    d.  Loss of household services;

    e.  Pain and suffering;

    f.  Loss of companionship; and

    g.  Emotional distress.

## COUNT IV: LOSS OF CONSORTIUM

49. Plaintiffs re-allege and incorporate the above allegations as if fully copied herein.

50. Plaintiff, Rachel King, wife and spouse of the decedent, Christopher King, contends that the Defendant's negligence and gross negligence caused her to suffer loss of society and companionship of her husband, including right to aid, right to service, right to support, right to comfort, the right to participate in activities together, and the right to share in responsibilities necessary to make a home.

51. The willful, intentional, negligent, reckless, and /or grossly negligent conduct of the Defendant and their employees, proximately caused and/or contributed to cause severe injuries and damages to Rachel King.

## COUNT V: DAMAGES

52. Plaintiffs re-allege and restate the above allegations as if fully copied herein.

11

53. As a direct and proximate result of the Defendants' acts, medical negligence, recklessness, and/or gross negligence, as set forth in each of the preceding paragraphs, Plaintiffs demand from the Defendants, and each of them, the following damages:

    a.  Any and all damages set forth in the preceding paragraphs;

    b.  Past physical pain and suffering of Christopher King;

    c.  Past mental and emotional distress of Christopher King;

    d.  Past loss of enjoyment of life of Christopher King;

    e.  Compensatory damages for medical expenses and funeral expenses of Christopher King;

    f.  The present value of the life expectancy of Christopher King;

    g.  Compensatory damages for lost income and loss of household services;

    h.  The loss of society, comfort, support, and affection due to the wrongful death of Christopher King;

    i.  All other losses arising from the injuries and death of Christopher King under §11-7-13;

    j.  Punitive and/or exemplary damages;

    k.  Incidental and consequential damages, including attorneys' fees and expenses;

    l.  Pre-judgment and post-judgment interest in an amount not less than 8% per year;

    m.  Any and all additional damages deemed allowable by this Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Rachel King, Individually, and as Personal Representative of the Estate of Christopher King, and on behalf of all Wrongful

Death Beneficiaries, respectfully demand a trial and respectfully request that judgment be entered against Defendants, Veterans Administration; John and Jane Does A-C; and Corporations X, Y, and Z, individually, jointly and severally, for all actual damages, compensatory damages, and punitive damages as shown by the evidence, and that Plaintiffs be awarded pre-judgment and post-judgment interest in the amount of 8% per annum and/or in such other amount as is determined by this Court; any and all attorneys' fees and costs of litigation; and all such other relief to which Plaintiffs may be entitled.

DATE: April 9, 2026.

Respectfully submitted,
**Rachel King, Individually, and as Personal Representative of the Estate of Christopher King, and on behalf of all Wrongful Death Beneficiaries**

By: _____
DOUGLAS L. TYNES, JR. (MSB# 101921)
Attorney for Plaintiffs

## CERTIFICATE OF COMPLIANCE

COMES NOW the undersigned counsel, in accordance with Section 11-1-58, and states that the undersigned attorney has reviewed the facts, and has consulted with an expert who is qualified to give expert testimony as to the standard of care or medical negligence, and whom the undersigned attorney believes is knowledgeable of the relevant issues and facts involved in this action. The undersigned attorney has concluded that based on such review and consultation there is a reasonable basis for commencement of this action.

RESPECTFULLY SUBMITTED, this the 9th day of April, 2026.

_____
DOUGLAS L. TYNES, JR. (MSB# 101921)

Douglas L. Tynes, Jr. (MSB # 101921)
Courtney P. Wilson (MSB # 103531)
TYNES LAW FIRM, P.A.
P.O. Box 966
525 Krebs Ave. (39567)
Pascagoula, Mississippi 39568-.966
(228) 769-7736
(228) 769-8466 fax
Mr. Tynes: monte@tyneslawfirm.com
Ms. Wilson: courtney@tyneslawfirm.com

14